UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONALD A. McELVANEY,

    Petitioner,

v.                                                     Case No. 11-C-0198

WILLIAM POLLARD, Warden,
Waupun Correctional Institution,

    Respondent.

## DECISION AND ORDER ON HABEAS CORPUS PETITION

### I. PROCEDURAL BACKGROUND

On February 22, 2011, the petitioner, Ronald A. McElvaney ("McElvaney"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. According to McElvaney's petition and the materials filed therewith, on March 28, 2006, he was convicted in the Kenosha County Circuit Court, after a jury trial, of first-degree sexual assault of a child, in violation of Wis. Stats. § 948.02(1). On May 2, 2006, he was sentenced to serve thirty years, consisting of fifteen years of initial confinement and fifteen years of extended supervision.

Following his conviction, McElvaney filed a motion for postconviction relief, which was denied by the trial court on June 13, 2007. On May 28, 2008, the Wisconsin Court of Appeals affirmed his judgment of conviction and the trial court's order denying his postconviction motion. On August 15, 2008, the Wisconsin Supreme Court denied his petition for review.

Thereafter, McElvaney filed *pro se* another postconviction motion, pursuant to Wis. Stats. § 974.06. In this motion, McElvaney moved to vacate his conviction on the basis that both his trial

counsel and postconviction counsel were ineffective for failing to challenge the charging period, as set forth in the complaint and information, as overly broad. This motion was denied by the trial court on January 16, 2009. On September 30, 2009, the Wisconsin Court of Appeals affirmed the trial court's denial of this postconviction motion. And on March 9, 2010, the Wisconsin Supreme Court denied McElvaney's petition for review.

As previously stated, on February 22, 2011, McElvaney filed his federal habeas corpus petition. In his petition, he presents the following basis for an ineffective assistance of trial and postconviction counsel claim:

> In the present case, the charging period is a three-month window and approximately three and one-half years elapsed between the alleged offense and the petitioner's arrest and filing of the criminal complaint. Although this alone does not require dismissal of the complaint, when combined with controlling and recently affirmed law regarding this specific situation, the complaint is not sufficiently specific as to satisfy petitioner's due process right to notice of the charge against him and dismissal of said charge is constitutionally required.

(Pet. 6–7, Dkt. #1.)

He also presents in his petition another claim for ineffective assistance of trial counsel. His basis for this particular claim is as follows:

> In the present case, trial counsel failed to object to the presentation of a child's videotaped interview after the child testified in violation of state statutes and controlling case law.

(Pet. 7, Dkt. #1.)

McElvaney does not present any argument, either in his opening brief or in his reply brief, in support of his second claim for ineffectiveness of trial counsel, i.e., the claim dealing with the videotaped interview. Thus, the court will not address that particular claim as it appears that McElvaney has abandoned such claim. This leaves for resolution the first of McElvaney's claims, to wit, that both his

trial counsel and his postconviction counsel were ineffective for failing to challenge the adequacy of the notice given to him by the complaint and information relative to when the offense was allegedly committed.

The briefing on the parties' respective positions on the issues raised in McElvaney's habeas corpus petition has now been completed. For the reasons that follow, McElvaney's petition for a writ of habeas corpus will be denied and this action will be dismissed.

## II. FACTUAL BACKGROUND AND THE COURT OF APPEALS' DECISION

The court of appeals set forth the factual background of the charges leveled against McElvaney as well as the nature of his challenge to the effectiveness of his counsel, both trial and postconviction, in its short, but to the point, decision as follows:

> A jury convicted McElvaney of first-degree sexual assault of a child. The complainant came forward when she was ten and alleged that when she was seven McElvaney sexually assaulted her on one occasion when he was her mother's live-in boyfriend. The girl narrowed the time frame of the assault to an approximately three-month period when they lived at a certain address. Assisted by counsel, McElvaney filed a postconviction motion contending that trial counsel ineffectively failed to object to how the child's videotaped statement was used. The trial court denied the motion after a *Machner* hearing. This court summarily affirmed and the supreme court denied the petition for review.
>
> McElvaney then moved pro se to vacate his conviction on grounds that the complaint was not sufficiently specific as to the date of the crime for him to prepare a defense. He argued that postconviction counsel was ineffective for not also asserting that trial counsel was ineffective for failing to move to dismiss the charge. The trial court denied the motion without a hearing because McElvaney's assertions were "conclusory and not factual." McElvaney appeals.
>
> To support a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficiency was prejudicial. ***State v. Maloney***, 2005 WI 74, ¶14, 281 Wis. 2d 595, 698 N.W.2d 583. Whether counsel's performance was ineffective presents a mixed question of fact and law. *Id.*, ¶15. The trial court's determination of what counsel did or did not do, along with counsel's basis for the challenged conduct, are factual matters which we will not disturb unless clearly

3

erroneous. *See id*. Whether counsel's conduct constituted ineffective assistance, however, is a question of law. ***Id.***

McElvaney contends that trial counsel was ineffective because a motion to dismiss could have averted a trial and that postconviction counsel was ineffective because a challenge to trial counsel's failure could have overturned his conviction. The underlying claim is that the three-month charging period was not sufficiently specific and prevented him from preparing an alibi defense. A criminal charge must be sufficiently stated to allow the defendant to plead and prepare a defense. **State v. Fawcett**, 145 Wis. 2d 244, 250, 426 N.W.2d 91 (Ct. App. 1988). Whether it is sufficient is a question of law we review independently on appeal. ***Id***. McElvaney offers nothing to suggest what his alibi might have been, nor has he demonstrated that a motion to dismiss would have been successful. A complaint alleging an offense over a span of time need not be dismissed for lack of specificity simply because a defendant indicates a desire to assert an alibi defense. *See id.* at 254 n.3. McElvaney therefore has not shown that trial counsel's failure to bring a motion to dismiss was deficient or prejudicial. As a result, postconviction counsel was not ineffective for failing to challenge trial counsel's performance. We agree with the trial court that McElvaney's conclusory allegations are without factual support and thus are insufficient to warrant a hearing. *See* **State v. Bentley**, 201 Wis. 2d 303, 313-14, 548 N.W.2d 50 (1996).

(Ct. App. Dec., 2-3, Dkt. #1-1.)

### III. LEGAL STANDARDS

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Newell v. Hanks*, 335 F.3d 629, 631 (7th Cir. 2003); *see also Del Vecchio v. Ill. Dept. of Corr.*, 31 F.3d 1363, 1370 (7th Cir. 1994) (*en banc*) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."). Federal habeas corpus relief cannot be granted when there have been only errors under state law. *See Milone v. Camp*, 22 F.3d 693, 698 (7th Cir. 1994).

The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

4

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (citing *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)). A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

### IV. DISCUSSION

The Sixth Amendment provides criminal defendants a constitutional right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Counsel's assistance is deemed ineffective when his conduct undermines the proper functioning of the adversarial process rendering the trial unreliable or the result unjust. *Washington v. Strickland*, 466 U.S. 668, 686 (1984).

The United States Supreme Court laid out the benchmark for judging a claim of ineffective assistance of counsel in *Strickland*. Under *Strickland*, the petitioner must prove two elements: (1) objectively unreasonable assistance and (2) substantial risk of prejudice. *Brown v. Finnan*, 598 F.3d 416, 419 (7th Cir. 2010). Courts reviewing habeas petitions need not address these two prongs in any particular order or even address both if the defendant makes an inadequate showing as to one. *Strickland*,

5

466 U.S. at 697.

Objectively unreasonable representation occurs where "counsel ma[kes] errors so serious that counsel [is] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The standard governing this "performance inquiry" is "whether counsel's assistance was reasonable considering all circumstances." *Id.* at 688. When assessing the reasonableness of counsel's performance, "every effort [should] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *U.S.* ex rel. *Hampton v. Leibach*, 347 F.3d 219, 246 (7th Cir. 2003). In short, review of an attorney's performance is highly deferential, allowing for sizable differences in professional opinion as to how best represent a client.

Prejudice occurs where "counsel's errors [are] so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. Even professionally unreasonable decisions by counsel do not require setting aside a conviction if the decision has no effect on the trial's outcome. *Id.* at 692. A showing that counsel's decision had some conceivable effect on the outcome is insufficient unless the error undermines the reliability of the outcome. *Id.* at 693.

A federal court may grant habeas relief on ineffective assistance claims even if the state court previously rejected such claim, but only if the state court decision was contrary to, or involved an unreasonable application of the standard set forth in *Strickland*. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The Supreme Court recently expounded on the difference between the standards of reasonableness used under *Strickland* and § 2254(d), stating:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is

6

> "doubly" so, *Knowles*, 556 U.S., at ___, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 788 (2011).

The Wisconsin Court of Appeals did not make specific reference to *Strickland* in its decision. Rather, it referenced Wisconsin case law, to wit, *State v. Maloney*, 2005 WI 74, ¶14, 281 Wis. 2d 595, 698 N.W.2d 583 (Wis. 2005), in setting out the elements that McElvaney had to satisfy in order to be granted relief based on ineffective assistance of counsel. At the same time, however, the Wisconsin Court of Appeals set forth accurately the elements that *Strickland* requires be met in order to be granted relief under the United States Constitution for a Sixth Amendment violation predicated on ineffective assistance of counsel. More precisely, the court of appeals stated, citing *Maloney* (which in turn cited *Strickland*), that "[t]o support a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficiency was prejudicial." (Ct. App. Dec., 2.) Thus, the state court correctly set forth the law to be applied in assessing the petitioner's ineffective assistance of counsel claim. And so, the question to be addressed is whether McElvaney has demonstrated that the Wisconsin Court of Appeals' "judgment . . . resulted in a decision that was contrary to, or involved an unreasonable application of [*Strickland*]". In my opinion, McElvaney has not done so.

First of all, McElvaney has not cited any United States Supreme Court case, other than *Strickland*, that he claims the Wisconsin court's decision was contrary to. Rather, he argues that the state courts misapplied *State v. R.A.R.*, 435 N.W.2d 315 (Wis. Ct. App. 1988) and *State v. Fawcett*, 426 N.W.2d 91 (Wis. Ct. App. 1988) in rejecting his ineffective assistance of counsel claim.

In *Fawcett*, the defendant argued that his due process right to notice of the charges and his fifth amendment right against double jeopardy were violated by charging documents alleging that the sexual assaults with which he was charged occurred "during the six months preceding December A.D. 1985." *Id.* at 93. The 10-year-old victim told his teacher about the assaults in December of 1985 and Fawcett was criminally charged immediately thereafter. *Id*.

In affirming the defendant's judgment of conviction, the court of appeals first of all noted that the test adopted by the Wisconsin Supreme Court in the face of a constitutional due process right to notice and double jeopardy challenge was set forth in *Holesome v. State*, 161 N.W.2d 283, 287 (1968). *Fawcett*, 426 N.W.2d at 94. "In order to determine the sufficiency of the charge, two factors are considered. They are, whether the accusation is such that the defendant determine whether it states an offense to which he is able to plead and prepare a defense to another prosecution for the same offense." *Holesome*, 161 N.W.2d at 287. In stating such, the *Fawcett* court also noted that "[t]he *Holesome* language is extremely broad and arguably states nothing more than the constitutional right to notice and the constitutional protection against double jeopardy in different terms." *Fawcett*, 426 N.W.2d at 94.

The *Fawcett* court went on to note that other states had adopted a more specific test, to wit, the "reasonableness test." *Id*. Indeed, the court of appeals in *Fawcett* certified the case to the Wisconsin Supreme Court inquiring whether the "reasonableness test" should be adopted as the law of Wisconsin. *Id*. at 95. The Wisconsin Supreme Court refused the certification. *Id*.

And so, the court of appeals followed and applied the *Holesome* test to the facts presented in *Fawcett*. *Id*. At the same time, however, the court of appeals concluded that the factors spelled out in the "reasonableness test" could assist that court in determining whether the *Holesome* test was satisfied in *Fawcett*. *Id*. The factors in the "reasonableness test" include:

8

> (1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; (3) the nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately; (4) the length of the alleged period of time in relation to the number of individual criminal acts alleged; (5) the passage of time between the alleged period for the crime and the defendant's arrest; (6) the duration between the date of the indictment and the alleged offense; and (7) the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.

*Id*.

After applying the above-stated factors, the court of appeals affirmed Fawcett's conviction. In doing so, the court noted:

> In a case involving a child victim, we conclude a more flexible application of notice requirements is required and permitted. The vagaries of a child's memory more properly goes to the credibility of the witness and the weight of the testimony, rather than to the legality of the prosecution in the first instance. Such circumstances ought not prevent the prosecution of one alleged to have committed the act.

*Id.* at 96.

In *R.A.R*, the defendant was charged on August 18, 1987, with four counts of sexual assault. *R.A.R.*, 435 N.W.2d at 315–316. The complaint alleged that the first and second charges occurred "during the spring of 1982," the third "during the summer of 1982," and the fourth "during the summer of 1983." *Id*. The trial court dismissed the charges and the court of appeals affirmed. *Id*. at 317. After considering and applying the seven *Fawcett* "reasonableness" factors, the court of appeals stated:

> The complaint fails to state the ability of M. and D. to particularize the dates and times of the alleged offenses. Both M. and D. [the victims] were at least a year older than the victim in *Fawcett* at the time of the claimed offenses. Assuming that spring and summer are three-month periods, the length of each is shorter than that in *Fawcett*. The complaint was not filed until August 1987. A warrant was issued for R.A.R.'s arrest on August 21, 1987.
>
> Over five years elapsed between August 1987, when R.A.R. was arrested and the complaint was filed, and the three-month period in which the first two offenses are alleged to have occurred, about five years between that filing and the period covering the

third offense, and about four years between that filing and the period covering the fourth offense. These gaps far exceed the interval in *Fawcett*, where the six-month period in which the offenses occurred ended with December 1985, the warrant for the defendant's arrest issued December 30, 1985, and the amended complaint first alleging the six-month period was filed on February 7, 1986. While the four-to-five-year intervals between the alleged offenses and R.A.R.'s arrest and when the complaint was filed do not alone render the charges insufficiently definite, those intervals in combination with other factors present weigh heavily in favor of that conclusion.

In light of the *Fawcett* factors, we conclude that the charging periods set forth for each of the four counts against R.A.R. are not sufficiently definite, and that R.A.R. was not adequately informed of the charges against him. For that reason, we affirm the order dismissing the complaint and information.

*R.A.R.*, 435 N.W.2d at 316–17.

Since the issuance of *Fawcett* and *R.A.R.*, the Wisconsin Court of Appeals has had occasion to apply the holdings of those cases to other cases. Some decisions are published, but most not. One published decision is *State v. Miller*, 2002 WI App 197, 257 Wis.2d 124, 650 N.W.2d 850 (Wis. Ct. App. 2002).

In *Miller*, the defendant, a therapist, was convicted of sexual exploitation by a therapist and first-degree sexual assault of a child. *Id*. at ¶ 1. In assessing the first three factors of the "reasonableness test," the court noted that the charging period was from March 1, 1989, to March 31, 1993. *Id*. at ¶¶ 5, 30–31. The victim, J.B., was thirteen years old when the sexual contact began. *Id*. at ¶ 30. The contact occurred during J.B.'s appointments in Miller's office when J.B. was alone with Miller. *Id*. Miller cautioned J.B. that the treatment sessions were private, that "nobody else has to know anything" and "what's in these walls stays in these walls." *Id*. J.B. explained that he was ashamed and embarrassed by Miller's conduct. *Id*.

In addressing the fourth factor, the court stated that

[w]hile the complaint alleged that the conduct covered a four-year period of time and J.B.

10

testified that Miller had sexually contacted him approximately thirty to forty times, the actual opportunity for Miller to have engaged in the offending conduct was limited to the seventy-three sessions with J.B. beginning in March 1989. Moreover, the period of time covered by the jury's guilty verdict, March 1, 1989, to November 28, 1992, further reduced these opportunities to the thirty-four sessions occurring within that time frame.

*Id*. at ¶ 32. And on this point the court "readily distinguished" Miller's case from *R.A.R.*:

> First, unlike *R.A.R.*, which involved multiple charges, Miller was charged with but one offense of sexual exploitation regarding J.B. Second, despite the extended charging period, we have already noted that the opportunities for Miller to have engaged in sexual contact with J.B. were substantially narrowed by the exact dates of his sessions with J.B. J.B.'s appointments were generally one hour in length, leaving Miller to defend against a period equivalent to approximately three days in length considering the entire charging period and approximately a day and a half considering the period of time covered by the jury's guilty verdict. Under this closer scrutiny, we conclude that the charging n this case satisfied this factor under *Fawcett*.

*Id.* at ¶ 34.

In discussing the fifth and sixth factors, which address passage of time between the alleged period for the crime and the defendant's arrest and the duration between the date of the indictment and the alleged offense, the court stated:

> Although no case has said so, we think it evident that these factors address the problem of dimmed memories and the possibility that the defendant may not be able to sufficiently recall or reconstruct the history regarding the allegations. Here, Miller's last session with J.B. occurred in March, 1993, and the complaint was not filed until July 1998 - a delay of over five years. However, unlike defendants in most criminal cases, Miller had the benefit of his own notes and records documenting the dates of his treatment sessions with J.B. and the content of those sessions. We do not see any undue prejudice to Miller as a result of this delay.

*Id.* at ¶ 35.

As for the seventh factor, the court stated:

> Finally, the seventh factor addresses the ability of the complaining witness to particularize the date and time of the alleged transaction or offense. As stated above, Miller's conduct occurred during the course of J.B.'s treatment with him. Although J.B. was not able to provide specific dates and times, he described the sexual contact in detail

> and he testified that all of the sexual contact occurred only during scheduled appointments and did not commence until after he had been in treatment with Miller for approximately one year. Despite the delay, J.B.'s testimony was sufficient so as to enable Miller to adequately confront it and to prepare a defense.

*Id.* at ¶ 36.

As previously stated, McElvaney's claim is that his trial and appellate counsel failed to challenge, by way of a motion to dismiss, the sufficiency of the complaint in terms of the time frame of the assault. He argues that, if a motion to dismiss had been filed, the trial court would have had to apply *Fawcett* and *R.A.R.* and, in doing so, would have had to dismiss the complaint.

First of all, *Fawcett* and *R.A.R.* are Wisconsin state court cases. Stated another way, they are Wisconsin state law. And to reiterate, federal habeas corpus relief cannot be granted when there have been only errors under state law. *See Milone*, 22 F.3d at 698. Thus, insofar as McElvaney's federal habeas petition is predicated on his counsel's failure to obtain relief under *Fawcett* and *R.A.R.*, it must fail for the simple reason that such claim is predicated on a violation of Wisconsin state law.

McElvaney's claim, at least facially, is based on *Strickland*. He claims that his counsel's failure to pursue a motion to dismiss constituted ineffective assistance of counsel because, if counsel had filed such a motion, it would have been successful and he thus would not have been convicted by the jury for the simple reason that there would have been no trial in the first instance.

Under *Strickland*, the petitioner must prove two elements: (1) objectively unreasonable assistance and (2) substantial risk of prejudice. *Brown*, 598 F.3d at 419. Courts reviewing habeas petitions need not address these two prongs in any particular order or even address both if the defendant makes an inadequate showing as to one. *Strickland*, 466 U.S. at 697.

Even assuming that counsel should have filed a motion to dismiss the complaint, it is not at all

certain that the trial court would have granted such motion. Nor is it certain that the state appellate courts would have ruled that the complaint was insufficient under *Fawcett* and *R.A.R.* In other words, McElvaney has not demonstrated that he was prejudiced by counsel's failure to move to dismiss the complaint.

To be sure, an argument could be made that the complaint gave McElvaney insufficient notice under *Fawcett*, and its progeny, of when the offense occurred. At the same time, however, an argument could be reasonably advanced that the complaint did give him sufficient notice under *Fawcett*, and its progeny.

As discussed above, the court of appeals in *Miller* found that the charge gave the defendant sufficient notice of the time of the offense to survive scrutiny under *Fawcett*. In *Miller*, a lengthy time frame had been identified during which multiple sexual assaults had taken place. But, like McElvaney, Miller was charged with but one offense of sexual exploitation regarding J.B.

Furthermore, in *Miller* there had been a lapse of five years between J.B.'s last therapy session and issuance of the criminal charges. By contrast, in McElvaney's case, the victim was ten when she came forward and alleged that when she was seven McElvaney assaulted her on one occasion when he was her mother's live-in boyfriend. In other words, there was about a three-year lapse, i.e., two years less than in *Miller*.

Moreover, the victim in *Miller* was thirteen to seventeen years of age when the assaults occurred. Despite the victim's being a teenager (and therefore not of tender age), the court nevertheless found that due process did not require dismissal of the charges against Miller. The court noted that

> "[c]hild molestation is not an offense which lends itself to immediate discovery. Revelation usually depends upon the ultimate willingness of the child to come forward." [*Fawcett*,] at 254, 426 N.W.2d 91. The same can be said for sexual exploitation of a

13

> patient by a therapist. A meaningful treating relationship between a therapist and patient is built on confidence, trust and confidentiality. In such a relationship, the patient is extremely vulnerable. When the therapist sexually abuses that relationship, it is understandable that the patient might experience uncertainty, guilt, embarrassment or shame. As a result, the patient may delay in reporting the matter or may never report it. In this case, J.B. saw Miller numerous times in a treatment setting and indicated that he did not realize at first the sexual nature of Miller's contact with him. When J.B. realized the gravity of the situation, he found himself too embarrassed and ashamed to reveal it. Even assuming that J.B.'s age and intelligence rendered him able to report the incidents, the nature and circumstances surrounding the events represent the most compelling factor in explaining J.B.'s delay in reporting the matter.

*Miller*, 2002 WI App 197, ¶ 31.

By contrast, the victim in this case was a mere seven-years-old when the assaults took place. This is precisely the type of victim about which the court in *Fawcett* was speaking when it stated:

> In a case involving a child victim, we conclude a more flexible application of notice requirements is required and permitted. The vagaries of a child's memory more properly go to the credibility of the witness and the weight of the testimony, rather than to the legality of the prosecution in the first instance. Such circumstances ought not prevent the prosecution of one alleged to have committed the act.

*Fawcett*, 426 N.W.2d at 96 (internal citations omitted).

And so, it is not at all certain, much less even probable, that a motion to dismiss would have been successful. Given such, it necessarily follows that McElvaney has failed to demonstrate that he was prejudiced by his counsel's failure to file a motion to dismiss based on *Fawcett* and *R.A.R.* And given that he has not demonstrated that he was prejudiced by any action (or inaction) of his counsel, it follows that he is not entitled to federal habeas corpus relief. Thus, McElvaney's petition for a writ of habeas corpus will be denied and this action will be dismissed.

## V. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. Thus, for the court to issue a certificate of appealability to McElvaney, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (emphasis added) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying McElvaney's habeas corpus

15

petition, McElvaney's claim does not warrant a certificate of appealability. Put simply, the petitioner has not shown "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Consequently, the court will deny McElvaney a certificate of appealability. Of course, McElvaney retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that McElvaney's claim for federal habeas corpus relief be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that McElvaney's petition for a writ of habeas corpus be and hereby is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 8th day of March 2012, at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge